**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

March 18, 2013

LETTER TO COUNSEL:

    RE:    *Kenda Davis v. Commissioner, Social Security Administration*;
            Civil No. SAG-12-0813

Dear Counsel:

    On March 15, 2012, the Plaintiff, Kenda Davis, petitioned this Court to review the Social Security Administration's final decision to deny her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 14, 24). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds). Under that standard, I will grant the Commissioner's motion and deny Plaintiff's motion. This letter explains my rationale.

    Ms. Davis filed her claim on July 1, 2009, alleging disability beginning on March 1, 2007. (Tr. 160-70). Her claim was denied initially on December 23, 2009, and on reconsideration on August 13, 2010. (Tr. 70-74, 76-77). A hearing was held on November 7, 2011 before an Administrative Law Judge ("ALJ"). (Tr. 41-63). Following the hearing, on November 22, 2011, the ALJ determined that Ms. Davis was not disabled during the relevant time frame. (Tr. 10-29). The Appeals Council denied Ms. Davis's request for review, (Tr. 1-5), so the ALJ's decision constitutes the final, reviewable decision of the agency.

    The ALJ found that Ms. Davis suffered from the severe impairment of "bipolar disorder vs. schizoaffective disorder." (Tr. 15). Despite these impairments, the ALJ determined that Ms. Davis retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform unskilled work involving only simple routine repetitive tasks in a low stress work environment (no strict production quotas). She can work independently. She can occasionally interact with the

---

[1] Ms. Davis originally also made a claim for Disability Insurance Benefits ("DIB"). (Tr. 160-70). However, at her hearing, she amended her onset date to July 31, 2009 and withdrew her claim for DIB. (Tr. 45-46).

*Kenda Davis v. Commissioner, Social Security Administration*
Civil No. SAG-12-0813
March 18, 2013
Page 2

public/coworkers/supervisors, although incidental contact is ok.

(Tr. 18). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Davis could perform jobs that exist in significant numbers in the local and national economy, and that she was therefore not disabled during the relevant time frame. (Tr. 24-25).

Ms. Davis raises six arguments in support of her appeal: (1) that the ALJ erred at step two by failing to find her verbal IQ of 70 to be severe; (2) that the ALJ erred at step three by failing to consider listings 12.04 and 12.05; (3) that the ALJ erred by making an adverse credibility finding; (4) that the ALJ erred by giving significant weight to a non-examining physician; (5) that the ALJ violated the treating physician rule; and (6) that the mental RFC determined by the ALJ was inadequate. Each argument lacks merit.

First, Ms. Davis contends that the ALJ erred by failing to find her verbal IQ of 70 to be severe. An impairment is considered "severe" if it significantly limits the claimant's ability to work. *See* 20 C.F.R. § 404.1521(a). The claimant bears the burden of proving that his impairment is severe. *See Johnson v. Astrue*, No. PWG-10-3139, 2012 WL 203397, at *2 (D. Md. Jan. 23, 2012) (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)). Under Fourth Circuit law, a mere diagnosis of borderline intellectual functioning does not establish a severe impairment absent some corresponding loss of function. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (citing *Sitar v. Schweiker*, 671 F.2d 19 (1st Cir. 1982)) ("However, a psychological disorder is not necessarily disabling. There must be showing of related functional loss.") It is clear that the ALJ thoroughly considered Ms. Davis's borderline intellectual functioning at step two, but determined that substantial evidence, including Ms. Davis's good grades in college courses (Tr. 305), indicated that any impairment was not severe. (Tr. 16). Moreover, even if I were to agree that the ALJ erred in his evaluation of any of Ms. Davis's impairments at step two, such error would be harmless. Because Ms. Davis made the threshold showing that other disorders constituted severe impairments, the ALJ continued with the sequential evaluation process and considered all of the impairments, both severe and nonsevere, that significantly impacted Ms. Davis's ability to work. *See* 20 C.F.R. § 404.1523. Accordingly, I find no basis for remand.

Ms. Davis's next argument is that the ALJ erred at step three by failing to consider listings 12.04 (affective disorders) and 12.05 (mental retardation). Although the ALJ did not specifically reference those listings, the analysis set forth by the ALJ in his opinion would expressly foreclose a finding that Ms. Davis met either listing. Listing 12.04 has the same "B criteria" as listing 12.02, which was considered by the ALJ. *See, e.g., Bloom v. Astrue*, No. SKG-08-0827, 2009 WL 2449877, at *19 n.18 (D. Md. Aug. 7, 2009) (determining that a finding that the claimant failed to meet listing 12.04 was "tantamount to a finding that [claimant] did not meet Listing 12.02."). Because the B criteria must be met, the ALJ's analysis forecloses a finding that Ms. Davis met listing 12.04. With respect to listing 12.05, Ms. Davis would have had to prove that she has "deficits in adaptive functioning initially manifested during the developmental period" — i.e. before age 22. 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.05. It is

abundantly clear from the ALJ's opinion that he found no such deficits. *See, e.g.,* (Tr. 19) ("I find that although the claimant suffers from mental problems, she is still able to take care of her own personal needs, think, communicate, and act in her own interest."). Further, Ms. Davis graduated from high school in regular classes. (Tr. 243). She presents no evidence that deficits in her adaptive functioning were detected before the age of 22 other than the comments of a non-treating psychologist who met with her once at age 23. (Tr. 285-86). As a result, any error in failing to expressly consider listing 12.05 is harmless.

Third, Ms. Davis argues that the ALJ failed to substantiate his adverse credibility finding with any adverse credibility finding from a medical source. An ALJ is not required to rely on a medical source's credibility finding when assessing the credibility of a claimant's hearing testimony. Ms. Davis makes the somewhat inexplicable assertion that, "It is unclear from the decision what about Ms. Davis' testimony or reports of her symptoms, led the ALJ to conclude that she was only partially credible." Pl. Mot. 41. In fact, the ALJ supported his adverse credibility finding by listing myriad inconsistencies between Ms. Davis's testimony and the other evidence of record. (Tr. 22-23). The most glaring inconsistency was Ms. Davis's hearing testimony that she had not attended school after high school, when in fact both her function report and her medical records evidenced her successful completion of college courses. *Id.* In light of this evidence and the other evidence cited by the ALJ, the adverse credibility finding must be affirmed.

Ms. Davis's fourth argument is that the ALJ erred by assigning significant weight to the non-examining physician, Dr. Sokas. However, the Commissioner must consider, and is entitled to rely on, opinions from non-examining doctors. *See* SSR 96-6p, at *3 ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."). The fact that Dr. Sokas's report was prepared before all other medical evidence was received is certainly relevant, but it does not undermine the validity of Dr. Sokas's conclusions as of the time they were rendered. It is clear from the opinion that the ALJ considered the subsequent medical evidence of record. Finally, although Dr. Sokas criticized two of the diagnoses made by consultative examiner Dr. Hirsch, Dr. Sokas did not suggest that Dr. Hirsch's examination was deficient in any way. (Tr. 263). The notes from Dr. Hirsch's examination provided a sufficient evidentiary basis for Dr. Sokas's conclusions.

Fifth, Ms. Davis contends that the ALJ failed to afford controlling weight to the opinions of three "treating physicians," Dr. Olivares, Dr. Allen, and Dr. Haine. Although the opinions of treating physicians can be entitled to controlling weight, such an opinion is not entitled to controlling weight if it is inconsistent with the other substantial evidence of record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Dr. Olivares's opinions were afforded little weight because his treatment predated the onset date in this matter, and because no treatment notes from Dr. Olivares were provided. (Tr. 23). Without treatment notes, the ALJ lacks the ability to consider whether the relationship between a claimant and a physician justifies considering the doctor as a "treating physician." *See* 20 CFR § 404.1527(c)(2)(i) ("When the treating source has seen you a

number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source."). With respect to Drs. Allen and Haine, the ALJ correctly noted that the treatment notes from those physicians and Ms. Davis's interim visits with RNs and LCSWs do not support the extreme restrictions in the physicians' opinions. (Tr. 23, *see e.g*. Tr. 319 (noting Ms. Davis was stable); Tr. 308 (noting "sustained symptomatic remission")). The ALJ also noted that Ms. Davis's activities of daily living, including her successful completion of courses at community college, further undermine the two physicians' opinions. Id. The ALJ's determination to assign little weight to the restrictive opinions of Drs. Allen and Haine, then, was supported by substantial evidence.

Ms. Davis's final argument is that her mental RFC was inadequate. Specifically, she contends that the "low stress" limitation was not sufficiently descriptive. However, the ALJ expressly defined "low stress" to mean "no strict production quotas," which provided enough description to be a meaningful limitation for the VE to consider. Ms. Davis also contends that the limitation to no more than occasional interaction with supervisors is inconsistent with unskilled work, because SSR 85-15 states that unskilled work usually involves a high level of supervision. However, it is clear that the ALJ intended the limitation of "no more than occasional interaction with supervisors" to narrow the range of unskilled work that Ms. Davis could perform.[2] The ALJ properly used the testimony of the VE to ensure that the jobs considered involved only the amount of interaction appropriate under Ms. Davis's RFC. Remand is therefore not warranted.

For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 14) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 24) will be GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge

---

[2] The actual RFC contained the awkward wording, "She can occasionally interact with the public/coworkers/supervisors, although incidental contact is ok." (Tr. 18). It appears that the word "only" was inadvertently eliminated before the word "occasionally." In the ALJ's hypothetical to the VE, the ALJ used the phrase "can have no more than occasional interaction with others, although of course in [sic] incidental contact is okay." (Tr. 59). Regardless, it is clear from the response that the VE understood the appropriate hypothetical limitation.